UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRBY LAVALLEE,

    Plaintiff,

v.                                                               Case No: 8:20-cv-2159-CEH-TGW

CHAD CHRONISTER,

    Defendant.
_____/

## ORDER

This matter comes before the Court on the Motion by Defendant Chad Chronister, in his official capacity as Sheriff of Hillsborough County ("Sheriff") to Dismiss Counts I, V, and VI of Plaintiff Kirby Lavallee's Amended Complaint (Doc. 8). Defendant Sheriff argues that Plaintiff's Amended Complaint should be dismissed for failing to state a claim. Plaintiff filed a response in opposition (Doc. 16). The Court, having considered the motion and being fully advised in the premises, will grant, in part, Defendant Sheriff Chad Chronister's Motion to Dismiss and grant Plaintiff leave to amend.

    **I.    BACKGROUND**[1]

Plaintiff, Kirby Lavallee ("Plaintiff"), was employed by the Sheriff from January 25, 2018 until January 3, 2019. Doc. 1-5 ¶ 8. He alleges that during his

---

[1] The following statement of facts is derived from the Plaintiff's Amended Complaint (Doc. 1-5), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

employment with Defendant, he was subjected to a hostile work environment, disparate treatment, different terms and conditions of employment, and suffered retaliation because he opposed Defendant's allegedly unlawful employment practices. *Id.* ¶ 9.

On October 7, 2018, Plaintiff's squad, which included Lieutenant White[2], responded to an armed home invasion. *Id.* ¶ 11. The Plaintiff, along with Lieutenant White and ten other officers, searched the neighborhood for the suspect and ultimately found him lying on the floor of a laundromat. *Id.* ¶ 12. Once the officers placed the suspect in a seated position, two officers verbally taunted the suspect, causing the suspect to become agitated and spit at them. *Id.* ¶ 17. Lieutenant White told the suspect that "[spitting at an officer] would be a good way to get your ass kicked." *Id.* ¶ 19. This comment irritated the suspect, who acted as though he would spit again. *Id.* 5 ¶ 20. To prevent the suspect from spitting again, Plaintiff stepped on the suspect's foot, applying pressure, and warned him not to spit at an officer. *Id.* ¶ 21. Lieutenant White, who was near his vehicle and away from the suspect, told Plaintiff to "not do [that] in front of the phase 5 (*i.e.*, new) deputies." Doc. 1-5 ¶ 25. Lieutenant White did not rebuke Plaintiff further. *Id.*

According to Plaintiff, Lieutenant White gossiped about the laundromat incident, embellishing the details of the incident and representing that Plaintiff tried to hurt the suspect for no valid reason. *Id.* ¶ 26. Plaintiff alleges that Lieutenant White

---

[2] Lieutenant White is a former defendant who was dismissed June 11, 2021. Doc. 25.

misrepresented the laundromat event to Captain Richard Roebuck. *Id.* ¶ 27. In turn, Roebuck directed White to draft a memorandum outlining what had occurred and requested authorization to conduct an administrative investigation into Plaintiff's action of stepping on the suspect's foot. *Id.* ¶ 28. In the memorandum, Lieutenant White wrote that "[Plaintiff's] use of force was unnecessary" and was only meant to cause the suspect pain. *Id.* ¶ 31. Plaintiff contends that Lieutenant White's memorandum left out key information, such as the fact that two officers had verbally antagonized the suspect and that Lieutenant White himself had threatened the suspect. Doc. 1-5 ¶ 32.

Three days after the laundromat incident occurred, on October 10, 2018, Plaintiff was suspended without pay. *Id.* ¶ 37. A few weeks later, Plaintiff was called into Internal Affairs ("IA") to review his case and give a statement. *Id.* ¶ 40. Upon reviewing his case, Plaintiff discovered that Lieutenant White's report lacked context and misrepresented the laundromat incident. *Id.* In the IA investigation that ensued, Lieutenant White finally admitted to making the threatening comment to the suspect and that he left this detail out of his previously made sworn statement. *Id.* ¶ 41. Despite IA obtaining Lieutenant White's admission to omitting a key comment during the initial proceedings against Plaintiff, the Sheriff's office continued to pursue its investigation of Plaintiff for excessive force used on a suspect. *Id.* ¶ 42.

During the IA investigation of the laundromat incident, the Sheriff's office opened an additional IA investigation regarding an incident on the morning of October 7, 2018. Doc. 1-5 ¶ 43. During the morning event, Deputy Kerr Craige was dispatched

3

to Walmart in reference to a theft suspect who was uncooperative and resisting arrest. *Id.* ¶ 44. Craige arrived at Walmart, observed the suspect lying on the floor, and ordered the suspect to get up off the floor. *Id.* ¶ 46. The suspect would not comply. *Id.* Craige contacted Plaintiff and requested Plaintiff's help with apprehending the suspect. *Id.* ¶ 47. Plaintiff arrived at the scene and saw the suspect was still on the floor and refusing to cooperate. *Id.* ¶ 48. Plaintiff asked Craige if the suspect had been searched, and Craige replied that he had not yet done so. Doc. 1-5 ¶ 49. The Walmart video reflects that Plaintiff picked the suspect up by his shirt, placed him on a bench, and arrested him. *Id.* ¶ 52.

Following this incident, Deputy Craige provided a sworn statement claiming Plaintiff had been unnecessarily rough with the suspect by picking the suspect up and dropping him several times. *Id.* ¶ 53. In Plaintiff's statement of the incident, he detailed that Craige had not handled the scene properly and had placed others at risk by continuing to allow the suspect, unsearched for any dangerous items, to lie on the floor unsecured. *Id.* ¶ 54. Plaintiff further asserted that Deputy Craige's statement, that Plaintiff had acted unnecessarily roughly with the suspect, was false and could be disproved by the Walmart surveillance footage. *Id.* ¶ 55.

Plaintiff contends that, during the investigation of the Walmart event and laundromat incident, exculpatory information was left out of the summary and reports authored by IA detectives. *Id.* ¶ 56. Both cases were deemed substantiated, and Plaintiff appealed the findings before the HCSO Pre-Disciplinary Review Board. *Id.* ¶¶ 57-58.

After the HCSO Pre-Disciplinary Review Board hearing, high-ranking HCSO officials informed Plaintiff's counsel that if Plaintiff "fell on the sword" and admitted he was wrong, he would not be terminated by HCSO. *Id.* ¶ 59. Plaintiff did as he was advised and admitted his actions were wrong. *Id.* Notwithstanding this admission, after the Pre-Disciplinary Review Board reviewed his case, Plaintiff received a phone call informing him that the Board would recommend his termination to the Sheriff. *Id.* ¶ 60.

Plaintiff alleges that the Disciplinary Review Board, comprised of Colonels Poore, Robinson, Bradford, Bunton, and Dominguez, demonstrated reckless disregard for the truth, made condescending remarks to Plaintiff, and once again recommended termination without sufficient justification. *Id.* ¶ 61. Plaintiff's counsel wrote a letter to the Sheriff advising him that Poore failed to recuse herself from the Disciplinary Review Board although she had already formed an opinion and that Chief Deputy Lusczynski also failed to recuse herself from the appeals process due to her known close personal relationship with Poore. *Id.* ¶ 62. To avoid allegedly unfair process, Plaintiff requested a direct meeting with the Sheriff, which was denied. Doc. 1-5 ¶ 63. Instead, the Sheriff referred Plaintiff back to Lusczynski who met with Plaintiff "off the record." *Id.* ¶ 63. On or around January 3, 2019, Lusczynski met with Plaintiff and told him that the decision to terminate him was final and effective immediately; that she was offended by his letter calling for her and Poore to recuse themselves; and that the Plaintiff would never be a law enforcement officer again. *Id.* ¶ 64.

In August 2020, Plaintiff saw on a television news story about Hillsborough County law enforcement officers that his name had been included on a *Giglio*-impaired list.³ Doc. 1-5 ¶ 65. Plaintiff was shocked, as he contends that he had not lied in any instance relating to his performance of his duties as an HCSO deputy sheriff. *Id.* To the contrary, Plaintiff contends that Lieutenant White, Major Poore, and other HCSO officials had lied. *Id.*

On August 17, 2020, Plaintiff filed a five-count Amended Complaint against Defendants Sheriff, White, and Poore in state court. Doc. 1-5. On September 14, 2020, Defendant Sheriff removed the case to federal court. Doc. 1. Defendants White and Poore have since been dismissed from the case. Doc. 25. The claims remaining in this action against the Sheriff are Counts I (Public Employee Whistle-Blower Retaliation), V (First Amendment Retaliation), and VI (Deprivation of Civil Rights, 42 U.S.C. § 1983 Due Process). Doc. 1-5.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are insufficient. *Id*. (citing *Bell Atlantic Corp. v. Two*mbly, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not enough. *Id*. A complaint must contain

---

³ *Giglio v. United States*, 405 U.S. 150 (1972) (pertaining to law enforcement officers who have been disciplined for matters involving untruthfulness).

sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III.   DISCUSSION

Defendant Sheriff moves to dismiss all claims asserted against him in Plaintiff's Amended Complaint for failing to state a cause of action.

    **A.**    **Violation of Florida's Whistle-blower's Act - Count 1**

In Count I, Plaintiff sues the Sheriff under Florida's Whistle-blower's Act ("FWA"). The FWA precludes an employer from retaliating against an employee "who reports to an appropriate agency violations of law on the part of a public employer . . . that create a substantial and specific danger to the public's health, safety, or welfare" or for disclosures "alleging improper use of governmental office, . . . or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee." Fla. Stat. § 112.3187(2). "The public whistleblower statute is remedial, and courts should construe it broadly." *Competelli v. City of Belleair Bluffs*, 113 So.3d 92, 93 (Fla. 2d DCA 2013). In analyzing a retaliation claim under the FWA, courts use the Title VII burden-shifting method of proof. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). To state a claim for a violation of the FWA, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an

7

adverse employment action; and (3) there existed a causal connection between the two events. *See Fla. Dept. of Children and Families v. Shapiro*, 68 So.3d 298 (Fla. 4th DCA 2011); *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958 (11th Cir. 2008).

The Sheriff does not contest the second and third elements. Rather, he contends Plaintiff did not engage in statutorily protected activity. Specifically, the Sheriff argues that Plaintiff's disclosures were not protected expressions under the FWA because they did not involve a violation or suspected violation of any federal, state, or local law, rule or regulation. Doc. 8 at 4. The Sheriff cites to provision (5)(a) of the FWA which precludes retaliation for disclosure of "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(5)(a).

In response, Plaintiff contends that his allegations of officers' falsifying records and making false statements and the presence of conflicts of interest by the disciplinary panel members fit into the broader category under (5)(b) precluding retaliation for disclosure of "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency." Fla. Stat. § 112.3187(5)(b). Given that courts are to construe the FWA broadly, Plaintiff submits his allegations are sufficient to satisfy the requirements of being a statutorily protected expression under subsection (5)(b).

8

Plaintiff alleges that key information was omitted from Deputy Graham's statement, Lieutenant White threatened a suspect and omitted material details from his sworn statement, and Deputy Craige did not handle the Walmart crime scene properly. While Plaintiff fails to identify a violation or suspected violation of a specific federal, state, or local law, rule, or regulation, Plaintiff's reported disclosures arguably fall within § 112.3187(5)(b). Taking Plaintiff's allegations as true, Lieutenant White provided a false account of the laundromat incident, exculpatory information was left out of a summary and report by Detective Johnson, Deputy Craige violated protocols, Review Board panel members continued to preside over Plaintiff's disciplinary proceeding despite conflicts of interest, and Plaintiff was pressured into admitting fault to avoid termination. Plaintiff alleges statutorily protected activity under the FWA.

The Sheriff next argues that Plaintiff's claim fails because even if the disclosures were protected, they were not made "to a chief executive officer or other appropriate local official" under § 112.3187(6).[4] In that regard, the Sheriff argues that internal affairs detectives are not appropriate local officials.

According to Plaintiff, he reported the incidents to Lieutenant White, Internal Affairs, and at the Disciplinary Review Board Hearing. Doc. 1-5 ¶¶ 24, 40, 54, 55, 61; Doc. 16 at 3. "Local official" is not defined in the statute, but Plaintiff directs the court to a district court opinion that relies on Florida Attorney General's advisory opinions

---

[4] In pertinent part, subsection (6) reads: "for disclosures concerning a local governmental entity, including any regional, county, or municipal entity, special district community college district, or school district or any political subdivision of any of the foregoing, the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official." Fla. Stat. §112.3187(6).

9

for guidance. *See Burden v. City of Opa Locka,* No. 11-22018-CIV, 2012 WL 4764592, at *13 (S.D. Fla. Oct. 7, 2012). While not precedential, the opinion is instructive. That court noted that the Florida Attorney General has found a transit authority's board of directors, a county's inspector general, and a town's ethics commission to qualify as "other appropriate local official[s] under the Act." *Burden*, 2012 WL 4764592, at *13 (S.D. Fla. Oct. 7, 2012) (citing Op. Att'y Gen. Fla. 2012-20 (2012); Op. Att'y Gen. Fla. 99-07 (1999); Op. Att'y Gen. Fla. 96-40 (1996)). The Attorney General has found individuals to be "appropriate local officials" where they are "empowered to investigate complaints and make reports or recommend corrective action." *Burden*, 2012 WL 4764592, at *13 (citing Op. Att'y Gen. Fla. 99-07).

On the facts alleged, Plaintiff made disclosures to internal affairs; an IA investigation ensued; an additional internal affairs investigation was opened against Plaintiff regarding the Walmart incident; and Plaintiff made statements in connection with that IA investigation. Doc. 1-5 ¶¶ 40, 41, 43, 54. Accepting Plaintiff's allegations as true, internal affairs was empowered to investigate and did investigate the complaints of misconduct by Plaintiff. Disclosures to internal affairs in connection with the investigations or to members of the Pre-Disciplinary Review Board who recommended action would qualify as being made to an "appropriate local official" under Fla. Stat. §112.3187(6).

Finally, the Sheriff argues that the protected disclosures needed to be signed and in writing to satisfy § 112.3187(7). Doc. 8 at 5. Subsection (7) of the statute states:

> This section protects employees and persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline . . . .

Fla. Stat. § 112.3187(7). Here, Plaintiff was requested to participate in an investigation, specifically the IA investigations, and his disclosures were made in connection with that. Additionally, any disclosures made in connection with a Disciplinary Review Board hearing would also qualify under this section. While disclosures made on his own initiative in a written and signed complaint would be protected, there is no such requirement, under the plain reading of the statute, for disclosures made in conjunction with an investigation or a hearing that they be in writing. Thus, the Sheriff's argument that Plaintiff's FWA claim fails because it was not written and signed is unavailing. The motion to dismiss the FWA claim is due to be denied.

### B. First Amendment Retaliation - Count V

In Count V of his Amended Complaint, Plaintiff sues the Sheriff for "First Amendment Retaliation" brought under 42 U.S.C. § 1983. Upon review, the motion is due to be granted as to this Count and the claim dismissed.

Section 1983 "creates a private right of action to remedy violations of 'rights privileges, or immunities secured by the Constitution and laws' of the United States." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (quoting *Rehberg v. Paulk*, 556 U.S. 356, 361 (2012)). "The cause of action is available against '[e]very person who acts

11

under color of state law to deprive another of a constitutional right.'" *Id.* (alteration in original) (quoting *Rehberg*, 556 U.S. at 361).

The Sheriff argues Plaintiff's First Amendment retaliation claim should be dismissed because Plaintiff does not allege that the Sheriff's Office had an official policy that deprived him of his First Amendment rights and he fails to allege facts to demonstrate he suffered retaliation for speaking out on a matter of public concern. Doc. 8 at 7–12.

A Sheriff's office does not incur § 1983 liability for injuries caused solely by its employees. *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Rather, municipalities and other bodies of local government, which are "persons" within the meaning of § 1983, may be sued directly only if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). "[Section] 1983 also authorizes suit for constitutional deprivations visited pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* (internal quotation marks omitted). While Plaintiff generally alleges the Sheriff "had an absence of required policy, and/or engaged in a custom and practice of unconstitutionally retaliating against employees who speak out on matters of public concern," Doc. 1-5 ¶ 111, Plaintiff alleges no ultimate facts that Plaintiff's termination in retaliation for exercising his First Amendment rights was caused through a policy statement, ordinance, regulation, or

12

decision officially adopted or promulgated, nor does the Amended Complaint contain any ultimate facts regarding the existence of a practice or custom. "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citations omitted). Plaintiff's blanket allegation that the Sheriff lacked a required policy is too vague and conclusory to allege the requisite causal connection. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.").

To state a claim for § 1983 liability against a municipality, a plaintiff must allege: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *Canton*, 489 U.S. at 388. The requisite "official policy" may be alleged in one of two ways: (1) by identifying an officially promulgated policy, or (2) by identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the municipality. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). Plaintiff's meager allegations fail to assert the existence of either. Thus, the Sheriff's motion to dismiss is due to be granted on this claim.

Additionally, the Sheriff argues this claim fails because Plaintiff does not allege he spoke on matters of public concern. *See Fernandez v. Sch. Bd. of Miami-Dade Cty.*,

13

Fla., 898 F.3d 1324, 1329 (11th Cir. 2018) (holding public employee who speaks pursuant to his official duties, as opposed to matters of public concern, is denied protection under the First Amendment). While Plaintiff alleges, in conclusory fashion, that he made "public statements outside the course of scope of his official duties" with the Sheriff, his factual allegations reveal to the contrary. Plaintiff's disclosures were made to IA investigators in conjunction with investigations of two incidents in which Plaintiff was involved while working in the course and scope of his employment as a deputy. By all accounts, Plaintiff's statements to the IA investigators and at the hearings were made under his official duties as deputy for the HCSO.

Plaintiff responds that he was speaking on matters of public concern when he reported issues related to government misconduct, but Plaintiff's response goes beyond the facts pleaded in the Amended Complaint. Further, Plaintiff cites to *Phillips v. Dawsonville*, 499 F.3d 1239 (11th Cir. 2007), for the proposition that a government employee's reporting of a co-employee's misconduct constitutes speech on a matter of public concern. But, in that case, the court found the government employee's complaints of employee misconduct related to sexual misconduct about co-workers and misuse of services and funds were not speech protected by the First Amendment. *Id.* at 1242–43. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Id.* at 1241 (quoting *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). Even taking Plaintiff's allegations as true, they fall short of demonstrating he was speaking on matters of public concern, and thus his First Amendment claim fails.

### C.     Deprivation of Civil Rights, 42 U.S.C. § 1983 Due Process – Count VI

In Count VI, Plaintiff alleges he was deprived of due process in violation of the Fourteenth Amendment because he was not afforded a fair internal investigation. He claims exculpatory evidence was ignored, reports were fabricated, and officers perjured themselves and verbally attacked Plaintiff, resulting in unjust IA investigations. Plaintiff alleges the misconduct was objectively unreasonable and was undertaken with intentional and willful indifference to his constitutional rights.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. "The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)). Here, Plaintiff identifies his claim as a violation of procedural due process. Doc. 16 at 12.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 429 U.S. 319, 333 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted).

Relevant to Plaintiff's claim here, the Eleventh Circuit has articulated a three-prong test for stating a procedural due process claim under 42 U.S.C. § 1983.[5] *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003). Under this test, a plaintiff must allege: (1) deprivation of a constitutionally-protected interest; (2) state action; and (3) constitutionally inadequate process. *Id.* (internal quotation marks omitted) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). There also must be a causal connection between the state action and the deprivation. *Kupke v. Orange Cty.*, 293 F. App'x 695, 697 (11th Cir. 2008).

However, "even if a procedural deprivation exists during an administrative hearing, [a procedural due process] claim will not be cognizable under § 1983 if the state provides a means by which to remedy the alleged deprivation." *Foxy Lady*, 347 F.3d at 1238 (citing *McKinney*, 20. F.3d at 1565). Indeed, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'" *McKinney*, 20 F.3d at 1557 (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural violation does a constitutional violation actionable under section 1983 arise." *Id.*

---

[5] As discussed in the section above, to state a claim for liability against a municipality or local government under § 1983, a plaintiff must allege that "'action pursuant to official municipal policy' caused [plaintiff's] injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Official municipal policy includes decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Plaintiff's allegations of an existing policy or practice are lacking.

16

The Sheriff argues that since Plaintiff did not allege he had a property interest in his continued employment with the Hillsborough County Sheriff's office, he has failed to allege an essential element that triggers the right to procedural due process. Doc. 8 at 13. Plaintiff responds that permanent, non-probationary police officers have a property interest in their employment and are entitled to a due process hearing before their termination can become final. Doc. 16 at 13 (citing *Grice v. City of Kissimmee*, 697 So. 2d 186 (Fla. 5th DCA 1997). Plaintiff has not specifically alleged a property interest, but even if Plaintiff has a property interest in his continued employment, Plaintiff has failed to allege deprivation of "notice and opportunity for hearing—" the essential requirement of procedural due process. *Loudermill*, 470 U.S. at 542.

In his Amended Complaint, Plaintiff alleges he was denied due process because he was deprived of a "fair investigation, and a fair appeal thereof." By his allegations, however, multiple IA investigations were conducted, there was a Pre-Disciplinary Review Board Hearing, and a Disciplinary Review Board hearing. The Supreme Court has recognized "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542. The Court further noted, "[t]his principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (citations omitted). Here, Plaintiff alleges he was given the opportunity to provide statements in connection with the IA investigations, including to Lieutenant White's alleged false account of the incident. After the complaints in the IA investigations were

substantiated, Plaintiff was given the opportunity and did appeal the findings to the HCSO Pre-Disciplinary Review Board which conducted a hearing. The Supreme Court has held "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545. According to the allegations in Plaintiff's Amended Complaint, he received a pretermination hearing. Thus, he does not state a claim for a constitutional deprivation and his procedural due process claim fails. It is

**ORDERED:**

1. The Motion by Defendant Chad Chronister, in his official capacity as Sheriff of Hillsborough County, to Dismiss Counts I, V, and VI of Plaintiff Kirby Lavallee's Amended Complaint (Doc. 8) is **GRANTED in part** and **DENIED in part**. The motion is granted as to the First Amendment Retaliation claim and the Procedural Due process claim. Plaintiff's claims against the Sheriff in Counts V and VI are dismissed without prejudice. In all other respects, the Sheriff's motion is denied.

2. Plaintiff will be given one final opportunity to amend his complaint to cure the deficiencies referenced. If he chooses, Plaintiff may file a Second Amended Complaint within 14 days from the date of this Order. Failure to timely comply will result in the case proceeding on Count I only.

**DONE AND ORDERED** in Tampa, Florida on September 1, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any